IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ULF CARLLSON,

          Plaintiff,                No. CIV S-10-0774 FCD KJM

       vs.

PETER J. MCBRIEN,                 FINDINGS AND RECOMMENDATIONS

          Defendant.

_____/

          Plaintiff is proceeding pro se with claims under 42 U.S.C. § 1983 and state tort law.  Defendant has filed a motion to dismiss for failure to state a claim on which relief could be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).  The court heard the motion on December 8, 2010.  Plaintiff appeared pro se; Franklin Gumpert appeared as counsel for defendant.

I.     Allegations of the Complaint

          Plaintiff was an employee with the California Department of General Services (DGS) when his wife filed for divorce in Sacramento County Superior Court in April 2004.  See Complaint ¶ 8.  Defendant was the Superior Court judge who presided over the case.  Id.  During the divorce proceedings, plaintiff testified about a loan he had received as part of a personal business transaction.  Id.  ¶ 13.  Defendant then ordered plaintiff, over plaintiff's counsel's

1

objections, to produce all of the conflict of interest disclosure forms plaintiff had filed with his employer.  Id.  Plaintiff had not disclosed the loan or personal business transaction in those forms.

The complaint alleges that in September 2006, defendant, still presiding over plaintiff's divorce proceedings, secretly contacted general counsel for DGS and communicated to her and others "that Plaintiff had failed to properly disclose a business transaction in the Conflict of Interest Forms, and this omission could constitute a criminal offense." Id. ¶ 16. Shortly thereafter, says plaintiff,

> DGS took disciplinary action against Plaintiff resulting in the termination of Plaintiff's employment with DGS, where Plaintiff's annual salary had been approximately $78,000.  DGS took this action against Plaintiff due to his failure to disclose the business relationship described above in the Conflict of Interest Forms.  The fact that defamatory information regarding Plaintiff on this issue had been communicated to DGS was not disclosed to Plaintiff.

Id. ¶ 18.

Plaintiff avers he first discovered defendant communicated with DGS on January 5, 2010, when the California Commission on Judicial Performance issued its "severe public censure" of defendant's conduct in the divorce case.  Id. ¶¶ 22-23.  Plaintiff filed this action on April 1, 2010, alleging that "[d]efendant's actions were malicious, made with the intent of harming and injuring Plaintiff, and were completely unrelated to any legitimate judicial function." Id. ¶ 35.  Plaintiff seeks damages for violation of his civil rights under the Civil Rights Act, 42 U.S.C. § 1983, and for libel under California state law.  He also seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and attorney's fees under 42 U.S.C. § 1988.

II.    Motion to Dismiss

As grounds for dismissal under Federal Rule of Civil Procedure 12(b)(6), defendant alleges: (1) Eleventh Amendment immunity with respect to the federal claims; (2) judicial immunity with respect to the federal claims; (3) the federal claims are barred by the statute of limitations; (4) no federal claim for mere damage to reputation is cognizable; (5) there

1  is no justiciable controversy for a declaratory judgment; (6) there can be no independent claim

2  for post-judgment attorney's fees under 42 U.S.C. § 1988; (7) the state law cause of action is

3  barred by judicial immunity and because the statements were not false; and (8) the court should

4  decline to exercise supplemental jurisdiction over the state law claim.

5        A.    <u>Legal Standard Under Rule 12(b)(6)</u>

6        Rule 12(b)(6) allows a defendant to move for dismissal on the basis that the

7  complaint fails to state a claim upon which relief can be granted.  When considering whether a

8  complaint states a claim upon which relief can be granted, the court must accept the allegations

9  as true, <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007), and construe the complaint in the light most

10  favorable to the plaintiff.  <u>See</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  Pro se pleadings

11  are held to a less stringent standard than those drafted by lawyers.  <u>See</u> <u>Haines v. Kerner</u>, 404

12  U.S. 519, 520 (1972).  Still, to survive dismissal for failure to state a claim, a pro se complaint

13  must contain more than "naked assertions," "labels and conclusions" or "a formulaic recitation

14  of the elements of a cause of action."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555-557

15  (2007).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by

16  mere conclusory statements do not suffice."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).

17  Furthermore, a claim upon which the court can grant relief must have facial plausibility.

18  <u>Twombly</u>, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual

19  content that allows the court to draw the reasonable inference that the defendant is liable for the

20  misconduct alleged."  <u>Iqbal</u>, 129 S. Ct. at 1949.  Attachments to a complaint are considered to be

21  part of the complaint for purposes of a motion to dismiss for failure to state a claim.  <u>Hal Roach</u>

22  <u>Studios v. Richard Feiner & Co.</u>, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

23        B.    <u>Eleventh Amendment Immunity and Declaratory Relief</u>

24        The Eleventh Amendment erects a general bar against federal lawsuits brought

25  against a state or state office or agency.  <u>Papasan v. Allain</u>, 478 U.S. 265, 276 (1986).  However,

26  suits against a state official, including, in some circumstances, a state judge, are an exception.

"[T]he Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983."  Hafer v. Melo, 502 U.S. 21, 30-31 (1991). The Supreme Court has also recognized claims against a municipal employee in his official capacity, but a judgment in such a case imposes liability on the municipality.  Brandon v. Holt, 469 U.S. 464, 472 (1985).  A municipality is not liable under the Civil Rights Act simply because the agency or municipality employed a person who violated a plaintiff's constitutional rights.  Monell v. New York City Dept. Of Social Services, 436 U.S. 658, 694 (1978).  The basis for any such claim of "official liability" must be a showing that a governmental policy or custom was "the moving force" behind the constitutional violation.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 820 (1985).

Plaintiff does not allege defendant conducted himself according to a policy or custom of the Sacramento County Superior Court.  To the extent plaintiff can recover damages from defendant under section 1983, then, it can only be against defendant in his individual capacity as a state official.  Any claim against defendant in his official capacity should be dismissed.

Plaintiff's claim for declaratory relief should also be dismissed.  A federal court is not empowered to issue retrospective declaratory relief with respect to allegedly unconstitutional conduct that has ended.  National Audubon Society, Inc. v. Davis, 307 F.3d 835, 847-48 (9th Cir. 2002); Los Angeles County Bar Ass'n v. Eu, 979 F.2d 697, 704 (9th Cir. 1992).

C.    Statute of Limitations

In actions under section 1983, federal courts apply the forum state's general statute of limitations for personal injury actions.  See Wilson v. Garcia, 471 U.S. 261, 279-80 (1985).  California's general statute of limitations for personal injury actions is two years.  Cal. Civ. Proc. Code § 335.1.  Therefore the limitations period for plaintiff's federal claim is two
/////

4

1    years.  However, the limitations period for plaintiff's state law claim of libel is one year.

2    Cal.Civ.Proc.Code § 340(c).[1]

3              The complaint alleges that defendant defamed plaintiff sometime in September

4    2006.  Plaintiff filed this action on April 1, 2010.  Defendant argues that the statute of limitations

5    on plaintiff's federal and state law claims began running in September 2006 and that therefore

6    plaintiff filed his action well past the expiration of the limitation period.  Plaintiff responds that

7    he did not know, and had no reason to know, that defendant had defamed him until the California

8    Commission on Judicial Performance issued its "severe public censure" of defendant's conduct

9    in the divorce case.  Compl. ¶¶ 22-23.

10             Under federal law, a cause of action accrues, and the applicable statute of

11   limitations only starts to run against the filing of the action, when the plaintiff "knows or has

12   reason to know of the injury which is the basis of the action."  Thompson, 314 F.Supp.2d at

13   1025.  The same standard governs causes of action brought under California law.  Grisham v.

14   Philip Morris U.S.A., Inc., 40 Cal.4th 623, 634 (Cal.2007).

15             Here, although plaintiff surely knew of his termination immediately, he expressly

16   alleges he never knew about defendant's communication with DGS and alleged role in his

17   termination until January 2010.  See Compl. ¶ 18.  At the hearing on the motion to dismiss,

18   plaintiff stated he inquired with DGS about the reason for his termination, but he was not told of

19   defendant's involvement, nor was he told that an outside party's communication with DGS had

20   begun the chain of events that ended with his termination.  Defendant replies that plaintiff ought

21   to have been more diligent in pursuing the reason for his termination, but nothing before the

22

23            [1] Although plaintiff alleges defamation and/or libel as the basis of both claims, the
     Supreme Court has held that the forum state's catch-all provision limiting the time for personal
24   injury actions still applies to claims under section 1983.  "[W]here state law provides multiple
     statutes of limitations for personal injury actions, courts considering § 1983 claims should
25   borrow the general or residual statute for personal injury actions."  Owens v. Okure, 488 U.S.
     235, 249-50 (1989).  See also Thompson v. City of Shasta Lake, 314 F.Supp.2d 1017, 1025
26   (E.D. Cal. 2004).

1  court undermines plaintiff's allegations and explanation that he had no reason to suspect he had

2  been defamed such that he should have investigated the identity of the defaming party.  At the

3  pleading stage at least, plaintiff has shown he could not have discovered he had a cause of action

4  against defendant until January 5, 2010.  By that time frame, his federal and state law claims are

5  timely.

6         D.    <u>Judicial Immunity</u>

7        State court judges enjoy broad immunity under section 1983, but that immunity

8  does not insulate every action a judge commits.  The Supreme Court has stated that "[judicial]

9  immunity is overcome in only two sets of circumstances.  First, a judge is not immune from

10  liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.  Second, a

11  judge is not immune for actions, though judicial in nature, taken in the complete absence of all

12  jurisdiction." <u>Mireles v. Waco</u>, 502 U.S. 9, 11-12 (1991) (internal citations omitted).  "The

13  factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act

14  itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the

15  parties, i.e., whether they dealt with the judge in his judicial capacity." <u>Stump v. Sparkman</u>, 435

16  U.S. 349, 362 (1978).

17        It appears the California Supreme Court has not conclusively defined the scope of

18  judicial immunity in state court actions, but at least two California appellate courts have

19  incorporated the Supreme Court's exceptions in applying judicial immunity under California

20  law.  <u>See</u> <u>Regan v. Price</u>, 131 Cal.App.4th 1491, 1496 (2005); <u>Soliz v. Williams</u>, 74 Cal.App.4th

21  577, 592 (1999).  A single analysis applies, therefore, to defendant's contention that he is

22  protected from liability under federal law and state law by the doctrine of judicial immunity: "it

23  is 'the nature of the function performed, not the identity of the actor who performed it, that

24  informs our immunity analysis.'" <u>Mireles</u>, 502 U.S. at 13 (quoting <u>Forrester v. White</u>, 484 U.S.

25  219, 229 (1988)).

26  /////

1       The core, offensive act averred in the complaint is defendant's allegedly defaming

2 plaintiff by informing DGS's general counsel that plaintiff might have committed a crime in

3 connection with his non-disclosure of personal business on certain conflict of interest filings.

4 The court determines that, if true, such conduct would constitute a function not normally

5 performed by a judge or within the expectations of parties dealing with a judge in his judicial

6 capacity.

7       A number of other courts have found viable claims for defamation in

8 circumstances analogous to the facts alleged in this case.  Perhaps most instructive is the well-

9 settled body of case law establishing that judges' and prosecutors' statements to the media do not

10 qualify as judicial acts and are therefore unprotected by judicial immunity.  In <u>Buckley v.</u>

11 <u>Fitzsimmons</u>, 509 U.S. 259, 277 (1993), the Supreme Court said a prosecutor's false statements

12 to the media about evidence against a murder defendant "have no functional tie to the judicial

13 process just because they are made by a prosecutor."  The Court explained that the immunity

14 doctrine "does not apply to or include... any publication of defamatory matter to any person other

15 than those to whom, or in any place other than that in which, such publication is required or

16 authorized by law to be made for the proper conduct of judicial proceedings."  <u>Id.</u> at 277 n.8.

17 The same rationale has applied to judges who make defamatory statements to the press or other

18 non-court personnel about a litigant, as defendant allegedly did here.  <u>See</u>, <u>e.g.</u>, <u>Barrett v.</u>

19 <u>Harrington</u>, 130 F.3d 246, 260-61 (6th Cir. 1997) (relying on <u>Buckley</u>); <u>Harris v. Harvey</u>, 605

20 F.2d 330, 336 (7th Cir. 1979) (relying on <u>Stump</u>); <u>Soliz</u>, 74 Cal.App.4th at 594-95 (relying on

21 <u>Barrett</u>).

22       In <u>New Alaska Development Corp. v. Guetschow</u>, 869 F.2d 1298 (9th Cir. 1989),

23 the Ninth Circuit extended judicial immunity to a receiver appointed by a state court to manage

24 the business assets of a marital estate during a dissolution proceeding.  The Ninth Circuit upheld

25 the district court's dismissal of claims directly attacking the receiver's execution of his duties in

26 managing the estate's assets.  However, the court refused to extend the doctrine of judicial

1    immunity to bar the claims for theft and slander against the receiver.  The court stated that "a

2    threshold inquiry is whether 'the precise act is a normal judicial function.'"  Id. at 1304.  The

3    court found slander was not an act "intimately connected" to the judicially appointed duties of a

4    receiver.  Id.

5            The New Alaska panel enforced judicial immunity as a bar to all of the claims

6    against the state court judge who appointed the receiver.  In doing so, the court reiterated

7    additional factors for assessing whether a particular act is judicial in nature, asking whether:

8    (1) the precise act is a normal judicial function; (2) the events occurred in the judge's chambers;

9    (3) the controversy centered around a case then pending before the judge; and (4) the events at

10    issue arose directly and immediately out of a confrontation with the judge in his or her judicial

11    capacity.  Id. at 1302.  There are no facts before the court to answer the second[2] or fourth factors

12    conclusively, but the court notes again that the first factor is later described in New Alaska as "a

13    threshold inquiry."  Id. at 1304.  That factor is also consonant with the baseline standard laid out

14    by the Supreme Court in Stump, supra.

15            Plaintiff has sufficiently alleged that defendant's conduct in allegedly defaming

16    him to DGS's general counsel was not a normal judicial function intimately connected with or

17    required for the proper conduct of the divorce proceedings before him.  Defendant is therefore

18    not due the protection of judicial immunity under section 1983 or California state law.

19       E.     Defamation Under Section 1983

20            Plaintiff's claim for defamation under the Civil Rights Act is subject to the

21    "stigma-plus" or "defamation-plus" rubric that requires plaintiff to plead an element beyond the

22    /////

23

---

24         [2] In Meek v. County of Riverside, 982 F.Supp. 1410, 1417 (C.D. Cal. 1997), the district
court, applying the New Alaska factors, said that "although it is unclear whether the [offending
25    act] took place in a judge's chambers, it did not occur while the court was in session."  Here,
defendant communicated with DGS about plaintiff without either parties' knowledge while the
26    divorce proceedings were in recess.

1   impunging of his reputation.  A defamation claim under section 1983

2            requires an allegation of injury to a plaintiff's reputation from
3            defamation accompanied by an allegation of injury to a
            recognizable property or liberty interest.  There are two ways to
4            state a cognizable § 1983 claim for defamation-plus: (1) allege that
            the injury to reputation was inflicted in connection with a federally
5            protected right; or (2) allege that the injury to reputation caused the
            denial of a federally protected right.

6   Crowe v. County of San Diego, 608 F.3d 406, 444 (9th Cir. 2010) (citation, quotation omitted).

7   Plaintiff here pursues the latter of those two theories, claiming defendant's defamatory

8   statements caused him to lose his job with DGS, a state agency.

9          Defendant's briefing and oral argument in favor of dismissal highlights two issues

10  regarding plaintiff's substantive pleading of his federal claim.  The first issue is whether

11  plaintiff's termination from employment implicates any federally protected right.  Second, even

12  if it does, DGS, not defendant, fired plaintiff.  Defendant argues he cannot be liable for DGS's

13  decision to terminate plaintiff's employment, even assuming the complaint's allegation that he

14  defamed plaintiff and was a proximate cause of his termination.

15         In Gini v. Las Vegas Metropolitan Police Dep't, 40 F.3d 1041 (9th Cir. 1994), the

16  Ninth Circuit stated that "[d]ischarge [from employment] assumes constitutional dimension

17  when the employee has a property interest in continued employment, or a liberty interest in not

18  being defamed, as a result of which she may not be terminated without due process."  Id. at

19  1044.  Gini and other cases on defamation in the employment context clearly require pleading a

20  "plus" factor to state a civil rights claim: that is, the loss of the job itself, not the allegedly

21  defamatory act, must have effected a violation of a right guaranteed by the Constitution.  Here,

22  the pro se complaint does not say which federally protected interest DGS violated when it fired

23  plaintiff.  Instead the complaint rests on the erroneous assumption that being defamed by a judge

24  and as a result losing one's job (along with the concomitant financial hardship) is enough to state

25  a federal civil rights claim.  Without more, defendant is correct that the complaint does not

26  sufficiently aver any constitutional violation.

1    Defendant is not correct, however, that his status as a third party to the

2    employment relationship between DGS and plaintiff puts him out of reach of any theory of

3    liability under section 1983.  In <u>Gini</u>, the plaintiff was an employee of the federal district court

4    who lost her job after a local police investigator communicated allegedly defamatory statements

5    to her employer.  The Ninth Circuit recognized that the police officer could still be liable "by

6    setting in motion a series of acts by others which the actor knows or reasonably should know

7    would cause others to inflict the constitutional injury."  <u>Id.</u> at 1044.  Here, it is reasonable to

8    infer from the complaint the allegation that when defendant called DGS he knew or should have

9    known that he was putting plaintiff's employment at serious peril, especially considering that he,

10   a state judge, allegedly told DGS's general counsel that plaintiff might have committed a crime.

11   "Such a third party can only be liable to the employee if the employee can show that the third

12   party could reasonably foresee that the third party's statements to the governmental employer

13   would cause the employee to be terminated without a pre-termination or name-clearing hearing."

14   <u>Baca v. Moreno Valley Unified School District</u>, 936 F.Supp 719, 733 (C.D.Cal.1996).

15   Still, under <u>Gini</u>, plaintiff must allege not only that his termination was

16   reasonably foreseeable from defendant's conduct but that defendant knew or should have known

17   a constitutional deprivation would occur in connection with the termination.  Failing to plead

18   that second link between the defendant and the actual constitutional deprivation was the fatal

19   deficiency in <u>Gini</u>, and the complaint in this case presents the same flaw.  The law, however,

20   does not foreclose the possibility that plaintiff could plausibly plead all the necessary elements of

21   a cognizable defamation claim under section 1983.  Therefore, consistent with its usual practice

22   with pro se litigants, the court will dismiss the original complaint with leave for plaintiff to

23   amend his federal claim, if plaintiff determines that he can plead the proper elements within the

24   parameters set by Federal Rule of Civil Procedure 11(b).[3]

25

26   [3] Plaintiff is informed that, if he files an amended complaint, the court cannot refer to his prior pleading in order to make the amended complaint complete.  Local Rule 220 requires that

F.   Defendant's Truth Defense

Defendant contends that plaintiff has failed to specify what statement by defendant to DGS counsel was false.[4]  Having determined that plaintiff should be given leave to amend his complaint, the court need not analyze which parts of the complaint affirmatively allege a false statement by defendant.  For the same reason, the court need not decide now whether to assert supplemental jurisdiction over the state law claim. Plaintiff will be allowed to amend his defamation claims, if he is able.

G.   Attorney's Fees Under § 1988

Defendant is correct that 42 U.S.C. § 1988 does not support an independent cause of action.  If plaintiff's amended complaint includes a section 1983 claim, he may include a request for attorney's fees under section 1988 in his prayer for relief.  Of course to be eligible for an actual award of fees plaintiff will need to qualify as a prevailing party and have actually incurred fees.

Accordingly, IT IS HEREBY RECOMMENDED that:

1.   The motion to dismiss (Docket No. 19) be granted in part and denied in part.

2.   Plaintiff's section 1983 claims against defendant in his official capacity and for declaratory relief should be dismissed with prejudice.

3.   Plaintiff's claims against defendant in his individual capacity under 42 U.S.C. §§ 1983 and 1988 should be dismissed without prejudice, with leave to amend.

---

an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of the defendant must be sufficiently alleged.

[4] Plaintiff has effectively conceded that he did not initially disclose to DGS the personal loan and business transactions that became the subject of defendant's communications with DGS.  However, he also alleges that defendant "made a false and defamatory claim to Plaintiff's supervisors at DGS that Plaintiff had violated the law" (Compl. ¶ 32) – an allegation that defendant does not contend is either true or false.

1       4.   The motion to dismiss as to the state law claim should be denied.

2       5.   Plaintiff be given thirty days from any order adopting these recommendations

3 in which to file an amended complaint.

4       These findings and recommendations are submitted to the United States District

5 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

6 one days after being served with these findings and recommendations, any party may file written

7 objections with the court and serve a copy on all parties.  Such a document should be captioned

8 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

9 shall be served and filed within twenty-one days after service of the objections.  The parties are

10 advised that failure to file objections within the specified time may waive the right to appeal the

11 District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

12 DATED:  December 19, 2010.

 

 

 

_____
U.S. MAGISTRATE JUDGE

4
carl0774.oah

12